[L. A. No. 1255.    Department Two.—July 12, 1904.]

## EDUARDO DE LA CUESTA, Respondent, v. GEORGE MONTGOMERY, Roman Catholic Bishop of Monterey, Appellant.

ACCOUNT STATED—INTEREST.—An account stated bears interest from its date.

ID.—SUPPORT OF FINDINGS AS TO ACCOUNT STATED.—The court, upon the facts in this case, was fully warranted in finding that there was a stated account which was intended as and for a full and complete settlement between plaintiff and defendant up to that date. [Beatty, C. J., dissenting.]

ID. — STATEMENT OF MONEY INDEBTEDNESS — PRODUCTS OF FARM NOT INCLUDED — CONTINUANCE OF MANAGEMENT. — Where the account stated was only of the money indebtedness then subsisting between the parties, it appearing that the plaintiff was employed as agent and manager of a farm of the defendant, and that it was intended to continue such management, the fact that there were at the date of the account stated unsold products of the farm which were not included in the account stated cannot affect its validity.

ID.—CONTINUANCE OF MONTHLY SALARY—CHANGE TO QUANTUM MERUIT—SUPPORT OF FINDINGS.—Where the findings properly construed are to the effect that during the whole of the month succeeding the account stated the plaintiff was entitled to a continuance of the agreed salary, and there was some evidence to support the findings to that effect, though the evidence was conflicting in relation thereto, the findings will not be disturbed; and an agreement made some time during that month as to a change of compensation to a *quantum meruit* will be held under the findings to apply only to succeeding months.

APPEAL from a judgment of the Superior Court of Santa Barbara County. W. S. Day, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

B. F. Thomas, and J. W. Taggart, for Respondent.

McFARLAND, J.—This is an action by plaintiff to recover for his services as agent and manager of certain farming lands of defendant, known as the College Ranch. Judgment was rendered in favor of plaintiff for $855 and costs, which amounted to $377.55; and from this judgment defendant appeals. The predecessor of the present incumbent was Bishop Mora, who employed plaintiff as superintendent of said College Ranch in November, 1891, at a salary of eighteen hundred dollars a year, or one hundred and fifty dollars a month. The plaintiff continued in the employment at the said salary under Bishop Mora until June, 1896, when Bishop Mora was succeeded as an incumbent by Bishop Montgomery, who continued to employ plaintiff as before until October, 1896, when the salary was reduced by mutual consent to sixteen hundred dollars a year, but the employment continued at the reduced salary. Plaintiff contends that his employment continued at the last-named salary until February, 1898, and his complaint is framed on that theory; while defendant contends that his employment on a salary ceased in July, 1897, and that if he performed services afterwards he was to receive only what they were reasonably worth. His duties were to conduct all the affairs of the ranch, to lease parts of it, and to collect the rents, and if the rents were part grain to see to the threshing of it, to sell and dispose of all the produce

and property on the ranch and to pay out all necessary expenses, and, in general, to attend to the business "just as a man would manage his own property," and to account to defendant for the receipts and disbursements. There are three counts in the complaint—the first upon an account stated on June 30, 1896, the second for services, etc., from June 30, 1896, to October 31, 1897, and the third for services from October 31, 1897, to October 31, 1898.

The court found that there was an account stated on June 30, 1896, of $342.25, and allowed interest thereon from its date, amounting to $119.12, and refused to consider any items of account prior to that time. It found, however, that the contract for his salary ceased in July, 1897; that after that date plaintiff rendered services which were to be paid for upon *quantum meruit;* but that as plaintiff, who relied on the theory of a continuing salary, did not introduce any evidence as to the value of such services, nothing could be allowed him for the same. The court allowed plaintiff's salary for the month of July, 1897, at the rate of sixteen hundred dollars per annum; and, taking an account of subsequent receipts and disbursements, found a balance in favor of plaintiff for eight hundred and eighty-five dollars, for which amount, with costs, judgment was rendered. This subsequent account need not be considered, for appellant makes only two points: 1. That the account of June 30, 1896, was not a stated account which bore interest, and the court erred in allowing interest thereon; and 2. That salary should not have been allowed for the whole month of July, 1897, but should have been allowed only to the 15th of said month. Before the trial defendant offered to allow judgment for seven hundred and fifty dollars and costs; and as the two items of $119.12 for interest, and one half of the salary for July, 1897—$66.67—would reduce the judgment below the amount offered, appellant contends that respondent should not recover costs, but appellant should have costs under section 1030 of the Code of Civil Procedure.

We think that the court properly found the account of June 30, 1896, to be an account stated which bore interest from its date. It certainly was in form and substance an account stated, having all the usual qualities and characteristics of that kind of instrument. It is attacked on the

ground that before that time respondent and Bishop Mora had made previous settlements, and that the amounts then found to be due were merely carried forward as starting points for subsequent settlements, and no interest was charged thereon. Those settlements, however, were for the entire current agricultural year, which ended November 1st, and which was also the end of the employment of respondent by the year; and we need not inquire if interest could have been properly demanded by respondent on the amount thus found due. But the account here involved was stated on June 30th, in the middle of the current year; and it was done at the time when Bishop Mora was turning over the property to his successor, Bishop Montgomery, and for the express purpose of then fixing the amount of indebtedness due at that juncture. The court was fully warranted in finding that the stated account was "intended as and for a full and complete settlement between plaintiff and defendant up to that date." It was also objected that there were unsold products of the farm on the ranch—hay, etc.,—which were not included in the said stated account; but there was no intention to wind up all the affairs of the ranch and then and there dispose of all the personal property. The business was to continue under the management of respondent as before; and the said account was only intended to be, and was only, a statement of the money indebtedness as it then stood between the parties.

The question raised by appellant as to the salary for July, 1897, does not involve the matter of costs, if the foregoing view as to the account stated was correct; it involves only the one half of the month's salary, $66.67. We think that the court was right in allowing the salary for July. It is contended that the finding is defective on this point. In finding XII the court found "that in the month of July, 1897, said contract was extinguished and employment thereunder was terminated by mutual consent of said plaintiff and said defendant; and all services rendered by plaintiff for defendant *thereafter* was on a *quantum meruit*," but that there was no evidence as to value of services "after the month of July, 1897." And, again, in subdivision 7 of finding XIV, "That after the said month of July, 1897, said plaintiff rendered certain services to said defendant at said defendant's request,

but there was no evidence of the value of said services produced on said trial, and the same was not rendered under said contract of employment.'' These findings clearly enough mean that the month of July, 1897, was included in the time during which the contract continued, and that only after said month were the services to be paid for upon *quantum meruit,* notwithstanding the previous expression ''to and until the month of July.'' The meaning of any written instrument is to be gathered from all that is said in it. In finding XII above quoted the word ''thereafter'' clearly refers to the preceding words ''the month of July.'' But it is also contended that if the finding be sufficient, there is no evidence to support it. The most, however, that can be said on the subject is that the evidence was conflicting. There is no pretense that any change in the contract as to salary was made until some time *during* the month of July, 1897. The former relations between the parties certainly continued into that month. The court may have attached some importance to the fact that the salary was due monthly, and that the month was a unit as to payment; but, however that may be, there is the testimony of plaintiff that he was not notified of any change during that month, and that there was no such change. He said that when defendant's agent, Father Stockman, went to the ranch in July, 1897, he was to be merely an intermediary between the defendant and plaintiff, to whom plaintiff was to account—just as formerly Father James Vila had been; and this is somewhat corroborated by the testimony of Father Stockman, who said that he told plaintiff that ''after that he would act under me.'' Moreover, there is a conflict of evidence as to the time in July when Father Stockman went to the ranch, at which time, according to appellant's contention, the former employment ended. Father Stockman thinks it was the sixth of that month; but it is clear that it was not until after the time of a certain conversation between plaintiff and Bishop Montgomery at a place called Surf. Plaintiff testified that the conversation at Surf was on July 20, 1897, and although Bishop Montgomery testified it was June 20th, yet in a letter written by him the next year he refers to the conversation as having occurred on July 20th. Appellant contends that the date given in this letter was evidently a clerical mistake, and it may have been so, but all the evidence was

submitted to the trial judge, and we see no reason for disturbing his conclusions.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.

A rehearing in Bank was denied August 12, 1904, upon which the following dissenting opinion was rendered by Beatty, C. J.:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause.

If the item of interest on the so-called stated account had been disallowed the amount found due the plaintiff would have been less than the sum for which the defendant offered to allow judgment to be taken, and the plaintiff instead of recovering his costs in a large amount would have been compelled to pay the defendant's costs—making a difference of more than four hundred dollars in the amount of defendant's liability.

There was no account stated in a legal sense. Bishop Mora was about to resign his incumbency, and for the benefit of his successor adjusted the account of his steward to date, and a balance was struck showing the state of the account to date, but there was no interruption to the employment of the plaintiff; his duties continued as before at the same salary. He had property of the corporation in his hands which he disposed of and the proceeds of which he received. The balance found due him on settlement with Bishop Mora was entered in his current account as a new item, and against it he charged himself with the moneys collected on account of the defendant. There was no agreement and no circumstance from which an agreement could be implied, and there is no finding that the balance ascertained on the adjustment of the account should be separated from the other items to form an independent obligation, payable at the date of the settlement, or at any time. On the contrary, the balance so ascertained was by the plaintiff himself treated as a new item in the current account of his stewardship, which continued without interruption for more than a year after the change in the incumbency of the bishop. And when his next account was rendered said balance was so entered without any charge for

interest. In this account he credited himself with a final balance of $1,585.59, a result reached by omitting to charge himself with various sums collected for defendant, amounting in the aggregate to $849.71. Deducting these items, the real balance due him on his own theory as to the settlement was less than $750, the amount for which the defendant offered to let him take judgment. He refused this fair offer and subjected the defendant to the expense of a protracted trial, all the costs of which the defendant must pay, together with the sum of $119.12 as interest on his so-called stated account. If it is an essential element of a stated account that there must be a promise express or implied to pay the ascertained balance as a separate obligation, there was here no evidence to sustain the conclusion that the balance found due by Bishop Mora was a stated account, but on the contrary the strongest evidence furnished by the conduct of the plaintiff himself that he had no such understanding. In the only case ever decided by this court involving this precise point—a case in which the equities were all in favor of the party seeking to recover interest on agreed balances in a current account, a case not noticed in the opinion of the court— the decision was against the claim. (*Chandler* v. *People's Savings Bank,* 61 Cal. 402.)

I think the judgment should have been reversed.